ELMER DAVENPORT, *et al.*,        : CIVIL NO: 1:09-CV-01694
                                  :
                Plaintiffs        :
                                  : (Judge Conner)
                     v.           :
                                  : (Magistrate Judge Smyser)
CAPTAIN D. KNEAL, *et al.*,        :
                                  :
                Defendants        :

## REPORT AND RECOMMENDATION

I. Background and Procedural History.

        The plaintiffs, four prisoners proceeding *pro se*,
commenced this civil rights action by filing a complaint on August
31, 2009.


        By an Order dated January 12, 2010, two of the
plaintiffs, Dickens and William, were dismissed.  Also dismissed by
the January 12, 2010 order were all claims against defendants
Hendrick, Metzinger, Hannon, Stotler, Allen, Eidem, Dulina, Walter,
Springer, and Wagner.  The remaining plaintiffs are Elmer Davenport
and George Betrand.  These plaintiffs name the remaining defendants
as: 1) CO Fryer, a corrections officer at the State Correctional
Institution at Frackville (SCI-Frackville); 2) CO Schultz, a
corrections officer at SCI-Frackville; 3) CO Young, a corrections
officer at SCI-Frackville; 4) CO Mohl, a corrections officer at
SCI-Frackville; 5) D. Kneal, the Captain of Intelligence at SCI-

Frackville; 6) Sharon Luquis, the Hearing Examiner at SCI-Frackville; 7) Deputy Kovalchik, a deputy and memeber of the Program Review Committee (PRC) at SCI-Frackville; 8) Deputy Wenerowicz, a deputy and member of the PRC at SCI-Frackville; 9) Deputy S. Kephart, a deputy and member of the PRC at SCI-Frackville; 10) Superintendent Shannon, the Superintendent at SCI-Frackville; and 11) R. MacIntyre, the Chief Hearing Examiner for the Pennsylvania Department of Corrections.

Plaintiff Davenport alleges the following facts in the complaint. On or about May 18, 2009, defendants Fryer and Shultz conducted a routine search of his cell. *Doc. 1* at 8, para. 27. The defendants asked him if his cell contained any contraband to which he replied: "Yes. But nothing major. No drugs, no wine, and no weapons. I already know that contraband is anything that you say is contraband. You won't get me to step into that trap." *Id.* at para. 31. Both defendants laughed and then proceeded to search the plaintiff's cell, including his picture collection which consisted of over 400 non-pornographic "female pictures," as well as one official White House photo and eight other photos of President Clinton's 1999 Correspondent's Dinner given to the plaintiff by an aunt. *Id.* at 8-9, para. 34-37. Defendants Fryer and Schultz collected and removed several items from the cell, including the picture collection and a phone book. *Id.* at 9, para. 43. Defendant

2

Fryer stated that they were taking the items to the wing officer's desk to sort everything out. *Id.* at para. 40. The plaintiff went through the items so that they could be more easily placed on a confiscated items receipt. *Id.* at para. 41. The plaintiff asked defendant Fryer why they were confiscating his pictures, to which defendant Fryer responded, "You'll get them back. Someone had some pictures stolen and we just want to make sure that none of these pictures are his." *Id.* at 9-10, para. 44. The plaintiff received a copy of the confiscation form. *Id.* at 10, para 45.

On or about May 19, 2009, defendants Fryer and Schultz went to a cell across from the plaintiff's housing unit to conduct a routine search. *Id.* at para. 46-47. At the end of the search defendants Fryer and Schultz came over to plaintiff's cell where he had been talking with some fellow inmates. *Id.* at para. 48-49. Defendant Fryer held up several pieces of paper with names and numbers on them and pictures of nude females and told the plaintiff that they knew that these items belonged to the plaintiff. *Id.* at para. 51. The plaintiff responded that he did not know what defendant Fryer was talking about and that the items were not his and had not come from his cell. *Id.* at para. 52. Defendant Fryer then stated "we'll see about that" and left the area with defendant Schultz. *Id.* at para. 53. Three other inmates were present to hear and see the exchange. *Id.* at 10-11, para. 54-56.

Later that same day, the plaintiff was served with a misconduct issued by defendant Fryer with defendant Schultz listed as a witness. *Id*. at 11, para. 60-61. The misconduct charges were: possession of contraband with relation to the property of another inmate, pornography, and items to conduct a business; loaning or borrowing property; lying to an employee; and refusing an order. *Id*. at para. 62. Defendant Fryer's statement on the misconduct form stated that prior to the search both the plaintiff and his cell mate were asked if they had any contraband. *Id*. at 11-12, para. 63. Each replied that he did not. *Id*. Some of the photographs found were pornographic. *Id*. Slips of paper with names and photo numbers on them were also found. *Id*. There was also an account statement of commissary items owed or paid with corresponding amounts. *Id*.

The plaintiff requested that all of the confiscated items be present at the hearing regarding the misconduct and that defendant Schultz appear as a witness on the plaintiff's behalf. *Id*. at 12, para. 68-69. He filled out the appropriate forms detailing his defense before the hearing. *Id*. at para 66-70.

A hearing on the misconduct was held on or about May 21, 2009. *Id*. at 13, para. 71. Defendant Schultz was not present at the hearing. *Id*. at para. 72. Defendant Fryer was in possession

of a corrugated records box with no lid. *Id*. at para. 74.
Defendant Luquis, the hearing examiner, introduced herself, read
the charges to the plaintiff, and then read the staff member's
version to the plaintiff. *Id*. at para. 75. Defendant Luquis then
looked up at the plaintiff and stated "I spoke with Captain Kneal
and CO Fryer about this very serious misconduct, I went over the
confiscated items with them, and they have you dead to rights. So
please don't insult my intelligence when you enter your pleas." *Id*.
at para. 76. The plaintiff then asked what had been said to
defendant Luquis in the plaintiff's absence. *Id*. at 14, para. 78.
Defendant Luquis refused to tell the plaintiff what defendants
Kneal and Fryer had told her. *Id*. at para. 79. Defendant Luquis
told the plaintiff that she would ask the questions. *Id*. at para.
80. She then asked the plaintiff how he pleads. *Id*.

  The plaintiff pleaded guilty in part and not guilty in
part. *Id*. at para. 83. After some discussion over the nature of
the charges with defendant Luquis, the plaintiff changed his plea
to not guilty on all of the charges. *Id*. at para. 84-85. Defendant
Luquis then ordered the plaintiff to be removed and stated "since
Mr. Davenport wants to act like a knucklehead, then we can both act
like knuckleheads." *Id*. at 15, para. 86. The plaintiff was removed
from the hearing for approximately ten minutes before being called
back in. *Id*. at para. 87-88.

Defendant Luquis told the plaintiff that she was denying his witness. *Id*. She stated that she had determined the testimony not to be necessary. *Id*. at para. 89-90. Defendant Luquis then told the plaintiff that she had already reviewed the contraband with defendants Kneal and Fryer and that all the contraband would be confiscated. *Id*. at para. 93. At this point defendant Fryer picked up the box of confiscated items and began to leave the hearing. *Id*. at para. 94. As defendant Fryer was leaving, the plaintiff noticed that the several pieces of paper with numbers on them taken from another inmate's cell were at the top of the box. *Id*. at 15-16, para. 95-96. The plaintiff stated that those papers were not his and asked if defendant Fryer had said that they belonged to the plaintiff. *Id*. at 16, para. 97. Defendant Luquis dismissed the plaintiff stating that she had considered his personal documents and found defendant Fryer's statements more credible than those of the plaintiff. *Id*. at para. 98.

Defendant Luquis dismissed the charges of lying to an employee and loaning or borrowing property. *Id.* Defendant Luquis found the plaintiff guilty of possession of contraband and of refusing an order and imposed a sentence of 180 days of disciplinary custody. *Id*.

On or about May 23, 2009, the plaintiff filed a misconduct appeal and sent an inmate request slip to defendant Kneal requesting that he hold some of the items on the confiscation form until the disposition of the final appeal. *Id*. at 17, para. 108.

On or about June 8, 2009, defendants Kovalchik, Wenerowicz, and Kephart denied the plaintiff's appeal stating that based upon their review the plaintiff was lying to have his misconduct reheard on appeal. *Id*. at para. 111.

On or about June 13, 2009, the plaintiff filed a second level appeal with defendant Shannon, raising the same issues. *Id*. at 18, para. 116-17. He argued that he had been improperly written up, that the hearing examiner was unfair and biased, that the hearing examiner had ex parte communications, and that evidence had been manufactured to support the charges against him. *Id*. at 17, para. 110. The appeal was denied. *Id*. at 18, para. 118.

On or about June 18, 2009, the plaintiff filed a third appeal on the final level raising the same issues as the first two appeals. *Id*. at para. 120-21. Defendant MacIntyre denied the plaintiff's appeal. *Id*. at para. 122.

On or about June 27, 2009, the plaintiff filed an inmate grievance. *Id*. at 19, para. 124. He sought the return to him of property that had been taken by defendants Fryer and Schultz that was not contraband. *Id*. On or about June 30, 2009, the grievance coordinator assigned an official grievance number and returned the grievance, unfiled. *Id*. at para. 125. On the same day the plaintiff appealed the grievance coordinator's decision not to file the grievance. *Id*. at para. 126. Defendant Shannon, to whom the appeal was addressed, did not respond. *Id*.

On or about July 23, 2009, defendant Mohl came to the plaintiff's housing unit and explained that defendant Kneal had sent him to inquire about the status of the plaintiff's misconduct appeal. *Id*. at para. 127-28. The plaintiff explained to defendant Mohl that not all of the items confiscated were contraband. *Id*. at para. 129. Non-contraband items were seized, he told Mohl, including the plaintiff's phonebook and the pictures of President Clinton. *Id*. Defendant Mohl told the plaintiff that he would look for the phone book and would go through the pictures to look for the ones with President Clinton. *Id*. at para. 130. He told the plaintiff that he would ask defendant Kneal whether certain seized items could be returned to the plaintiff. *Id*. The plaintiff requested defendant Mohl to inform defendant Kneal that the plaintiff would be sending a request slip about his property. *Id*.

at para. 131.  Defendant Mohl replied that he would. *Id*. at para.
132.

On or about July 23, 2009, the plaintiff sent a letter
to defendant Kneal requesting that the confiscated items be
preserved in anticipation of federal litigation. *Id*. at para. 133.
The plaintiff retained a carbon copy of this letter, and copies
were sent to defendants Shannon, Kovalchik, Wenerowicz, and
Kephart. *Id*. at 20, para. 134.

On or about July 24, 2009, defendant Mohl returned to
escort another inmate to security control. *Id*. at para. 136.  The
plaintiff yelled out from his cell to Mohl, asking whether he had
retrieved the phonebook and pictures. *Id*. at para. 137.  Mohl
yelled back to the plaintiff, stating that Captain Kneal had said
no to the return of the phone book and had said that there were no
pictures of the President "inside that stuff." *Id*. at para. 138.

The plaintiff contends that defendants Fryer and
Schultz entered into a conspiratorial agreement to deprive him of
both his property and his liberty.  He contends that they agreed to
manufacture evidence, to falsify misconduct charges against the
plaintiff, and to enlist the help of defendants Kneal and Luquis in
the deprivation of the plaintiff's property.  He contends that

defendant Mohl was part of the conspiracy. The plaintiff contends that he was charged with a more serious crime than was factually supported by the evidence and that defendant Luquis violated his due process rights.

The plaintiff also claims that defendants Shannon, Kovalchik, Wenerowicz, Kephart, and MacIntyre violated his due process rights by failing to correct the violation by the other defendants of his due process rights. The plaintiff asserts that his First, Fourth, Eighth, and Fourteenth Amendment rights were violated.

Plaintiff Davenport is seeking the return of his property, specifically the photographs of the White House and of President Clinton. He also seeks compensatory and punitive damages.

Plaintiff Betrand alleges the following facts in the complaint. On or about March 12, 2009, during a general search of the plaintiff's cell block, a corrections officer discovered items claimed to be contraband, including a letter to the IRS, two 1040EZ forms, and two slips of paper with dates and amounts of money. *Id*. at 26, para. 184-87. These items were placed on a confiscation form. *Id*. at para. 187. Eight days later defendant Kneal issued a

misconduct in relation to the confiscated items charging the plaintiff with a violation of the Pennsylvania Crimes Code (theft by deception) and possession of contraband with regard to the tax forms. *Id.* at para. 188-89.

On or about March 24, 2009, a misconduct hearing was held. *Id.* at para. 190. The hearing examiner, defendant Luquis, introduced herself and read the charges to the plaintiff. *Id.* at para. 191. Defendant Luquis then stated that she had "a very long talk with Captain Kneal about this misconduct and I do believe you are guilty. So please don't insult my intelligence when you enter your pleas." *Id.* at para. 192.

The plaintiff pleaded not guilty to the charge of theft by deception and guilty with an explanation to the charge of possession of contraband. *Id.* at 27, para. 194. While the plaintiff was attempting to present his defense, defendant Luquis kept interrupting, asking prosecutorial questions, shoving different papers in the plaintiff's face and demanding explanations. *Id.* at para. 197.

Defendant Luquis accepted the plaintiff's plea of guilty and sentenced him to ninety days of disciplinary custody.

*Id.* at para. 198.  Defendant Luquis found the plaintiff guilty of
the charge of theft by deception and sentenced him to an additional
ninety days of disciplinary custody. *Id.* at 28, para. 201.

On or about March 30, 2009, the plaintiff filed an
appeal on the basis that the findings of fact were insufficient to
support the conviction. *Id.* at para. 204.  On or about April 23,
2009, the plaintiff received notice that his appeal had been denied
by the Program Review Committee consisting of defendants
Kovalchick, Wenerowicz, and Kephart. *Id.* at para. 206-07.

On or about April 25, 2009, the plaintiff appealed to
defendant Shannon, placing the appeal with defendant Young for
filing. *Id.* at para. 209.  Upon the plaintiff's inquiry about the
status of his appeal, defendant Shannon replied that no appeal had
been received. *Id.* at 29, para. 210-11.  The plaintiff received
this response on or about June 1, 2009 and again filed an appeal to
defendant Shannon on June 2, 2009. *Id.* at para. 212-14.  That
appeal was denied by defendant Shannon as untimely. *Id.*  On or
about June 24, 2009, the plaintiff filed an appeal with defendant
MacIntyre, which was also denied as untimely. *Id.* at para. 216-17.

The plaintiff asserts that defendant Young
intentionally failed to deliver the plaintiff's appeal, that

defendant Luquis wrongfully accepted the plaintiff's guilty plea even though the plaintiff was not guilty, that there was no evidence to support the charges, and that defendants Kneal and Luquis conspired against him to deprive him of his liberty in violation of his due process rights. The plaintiff also contends that defendants Shannon, Kovalchik, Wenerowicz, Kephart, and MacIntyre violated his due process rights by failing to correct the violation by the other defendants of his due process rights.

The plaintiff is seeking both compensatory and punitive damages.

The remaining defendants filed a motion to dismiss the remaining claims of the remaining plaintiffs' complaint on January 8, 2010, along with a brief in support. (Docs. 27, 28). The plaintiffs filed a brief in opposition to the defendants' motion on February 3, 2010. (Doc. 34). The defendants have not filed a reply brief.

In their brief in support of the motion to dismiss, the defendants argue that the plaintiffs' claims should be dismissed for the following reasons: a change in the level of an inmate's security is not the type of deprivation of a liberty interest that gives rise to a type or degree of process beyond what was afforded;

the plaintiff's due process rights were not violated at their respective disciplinary hearings; the plaintiffs' claims are insufficient to establish the existence of a civil conspiracy; any claim of false imprisonment was merely an allowable change in custodial level and otherwise barred by sovereign immunity; there is no Fourth Amendment protection for inmates against searches and seizures in their cells; the plaintiffs had no property interest in any of the items taken because they are contraband; and the plaintiffs have not sufficiently established the personal involvement of the supervisory defendants.

II. Standard of Review.

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint; the court must decide whether, even if the plaintiff were able to prove all of his allegations, he would be unable to prevail. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In connection with a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the burden is on the moving party to show that there is no actionable claim. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980). When deciding a motion to dismiss, the court must accept all material allegations of the complaint as true and draw all inferences in the light most

favorable to the plaintiff. *Pennsylvania House, Inc. v. Barrett*, 760 F. Supp. 439, 449 (M.D. Pa. 1991). However, "conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true." *Id*. at 449-50.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). The statement required by Rule 8(a)(2) need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, more is required than labels, conclusions and a formulaic recitation of the elements of a cause of action. *Id.* "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft, supra,* 129 S.Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft, supra,* 129 S.Ct. at 1949 (quoting *Twombly*, *supra,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

III. Procedural Due Process Claims.

The plaintiffs assert similar due process claims, alleging that they were not afforded due process in their initial disciplinary hearings before defendant Luquis, which hearings resulted in each plaintiff being sentenced to a total of 180 days disciplinary custody.

This is a 42 U.S.C. § 1983 action dealing with prison disciplinary proceedings. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.* "To state a claim under § 1983, a plaintiff 'must allege both a deprivation of a federally protected right and that this deprivation was committed by one acting under color of state law.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005)(quoting *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997)).

"The Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478 (1995). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Hayme,* 427 U.S. 236, 242 (1976).

"A liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations." *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005). "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own... , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, *supra*, 515 U.S. at 484 (citations omitted). The Supreme Court in *Sandin* held that the plaintiff's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486. The Court concluded that, "neither the [state] prison regulation in question, nor the Due Process Clause itself, afforded [the prisoner] a protected interest that would entitle him to the procedural protections set forth in *Wolff*." *Id.* at 487.

"[T]he baseline for determining what is 'atypical and significant' - the 'ordinary incidents of prison life' is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997). "Discipline by prison officials in response to a wide range

18

of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Sandin*, *supra*, 515 U.S. at 485.

"In deciding whether a protected liberty interest exists under *Sandin*, [a court] consider[s] the duration of the... confinement and the conditions of that confinement in relation to other prison conditions." *Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003). In one instance, fifteen months in administrative segregation did not impose a significant atypical hardship on one inmate. *See Griffin*, *supra*, 112 F. 3d at 706. In contrast, another inmate had a liberty interest regarding eight years in solitary confinement. *See Shoats v. Horn*, 213 F. 3d 140, 144 (3d Cir. 2000).

The plaintiffs did not have a liberty interest in remaining in the general prison population and in not being placed in disciplinary confinement that gave rise to an expectation on their part to a process more involved or more elaborate than that which each plaintiff received. Each prisoner was afforded a hearing, an opportunity to be heard and a decision based upon what the hearing officer had seen and heard. The state has not created a liberty interest in preserving a degree or kind of confinement that is less restrictive than the segregated confinement with which the plaintiffs here have been sentenced to by the hearing examiner.

Given the absence of such a liberty interest, Plaintiff Betrand fails to state a claim upon which relief can be granted.

Plaintiff Davenport also fails to state a claim upon which relief can be granted that he has had taken from him a liberty interest without due process.

Apart from the alleging a taking of liberty without due process, plaintiff Davenport alleges a taking of property without due process.  He alleges that some of the pictures confiscated from his cell, specifically those of the White House and of President Clinton, were not contraband and should be returned to him.

The Supreme Court in *Hudson v. Palmer*, 468 U.S. 517 (1984), held that "[f]or intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Id*. at 533.  *Hudson* applies in the case of an unauthorized deprivation of a prisoner's property.  In instances of intentional and authorized takings of prisoners' property, a suitable postdeprivation remedy may not be sufficient. *See Jones v. Clark*, 607 F.Supp. 251, 256 (E.D. Pa. 1984).

Due process, however, does not require a predeprivation hearing every time a loss occurs as a result of an established governmental procedure. *Shabazz v. Odum*, 591 F.Supp. 1513, 1517 (M.D. Pa. 1984). "[E]ither the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." *Parratt v. Taylor*, 451 U.S. 527, 539 (1981). In considering the adequacy of a postdeprivation remedy when no predeprivation remedy was afforded, this court has found that prisons are constitutionally required to afford inmates only a meaningful postdeprivation remedy. *Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008).

The defendants assert that the plaintiff had no property interest in any of the items removed from his cell because they were contraband, *see Lowery v. Cuyler*, 521 F. Supp. 430, 432 (E.D. Pa. 1991), and that any process he was afforded with regard to the items was sufficient to satisfy the Due Process Clause. The plaintiff, on the other hand, alleges that his property was taken without a fair opportunity for him to defend his actions and explain that at least certain items that were taken from his cell were not contraband.

It is clear from the face of the complaint that the plaintiff was provided with an adequate postdepreviation remedy. A hearing was held at which the plaintiff was provided an opportunity to speak on his own behalf with regard to the confiscated items and to respond to the charges against him in connection with the items. The plaintiff was afforded the opportunity to appeal the decision of the hearing examiner and states in his complaint that he filed three consecutive appeals regarding the hearing. The plaintiff also used the prison grievance procedure and filed an inmate grievance concerning the return of his property, despite the grievance coordinator's appealable decision not to file the grievance. Although the plaintiff maintains that the defendants did not follow their own procedures regarding the hearing and appeals, the plaintiff has failed to demonstrate that the postdeprivation procedure that was afforded him was not meaningful. Given the absence of a liberty interest and his failure to demonstrate an inadequate postdeprivation remedy with regard to his property, Plaintiff Davenport fails to state a claim upon which relief can be granted.

Accordingly, we will recommend that the motion to dismiss the procedural due process claims against the defendants be granted.

IV. Substantive Due Process Claims.

The complaint can be read to allege violations of both of the plaintiffs' substantive due process rights. The plaintiffs allege that they were arbitrarily and capriciously charged with violations more serious than those with which they should have been charged.

In choosing the appropriate standard to apply in analyzing a substantive due process claim against a government official, the Court of Appeals has frequently employed the "shocks the conscience" standard. *Hunterson v. DiSabato*, 308 F.3d 236, 247 n. 10 (3d Cir. 2002). Under this standard "[t]he relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times "conscience shocking" or "deliberately indifferent." *Id*. at 247.

The plaintiffs have asserted no claims outside of bald allegations that their substantive due process rights were violated. The facts pleaded in the complaint do not support an inference of actions so egregious as to "shock the conscience" or to amount to a substantive due process violation. Accordingly, we

will recommend that any substantive due process claim against
defendants Luquis, MacIntyre, Fryer, Schultz, Young, Mohl, Kneal,
Shannon, Kovalchik, Wenerowicz, and Kephart be dismissed.

V. Conspiracy Claims.

Both plaintiffs assert a § 1983 conspiracy claim.
Plaintiff Betrand alleges that defendants Kneal and Luquis
conspired against him to affect the outcome of his disciplinary
hearing.  Plaintiff Davenport alleges that defendants Frye,
Schultz, Mohl, Kneal and Luquis conspired to deprive the plaintiff
of property and liberty, to manufacture evidence, and to falsify
misconduct charges.

"In order to sufficiently allege a conspiracy, a
plaintiff must show a combination of two or more persons to do a
criminal act, or to do a lawful act by unlawful means or for an
unlawful purpose." *Panayotides v. Rabenold*, 35 F.Supp.2d. 411, 419
(E.D. Pa. 1999).  It is necessary that a plaintiff "make specific
factual allegations of combination, agreement, or understanding
among all or between any of the defendants to plot, plan, or
conspire to carry out the alleged chain of events." *Id*.  Only
particularized allegations of conspiracy, "such as those addressing
the period of the conspiracy, the object of the conspiracy, and

certain other action of the alleged conspirators taken to achieve that purpose will be deemed sufficient[.]" *Id*. "It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997).

The plaintiffs have not stated a claim upon which relief can be granted of a conspiracy to violate a federally protected right of the plaintiffs. The fact that conversations took place between some of the defendants concerning the plaintiffs, concerning the subject matter of upcoming disciplinary proceedings or concerning items taken from the plaintiffs' cells does not support a claim of a conspiracy to violate federally protected rights. The allegation that defendants Fryer and Schultz conducted searches and collected contraband together does not indicate a conspiracy, nor does the assertion that defendants Kneal and Luquis had a private conversation.

Based upon the facts alleged in the complaint, defendant Mohl did not participate in any way with the confiscation of plaintiff Davenport's property, other than to attempt to return some of the items.

As to Plaintiff Betrand, the assertion that defendants Kneal and Luquis had a private conversation is insufficient to support a claim of conspiracy. Defendant Young's act of failing to file an appeal on the plaintiff's behalf does not give rise to an inference of conspiracy. We will recommend that the conspiracy claims against defendants Kneal, Luquis, Fryer, Schultz, Young, and Mohl be dismissed.

VI. False Imprisonment Claims.

The plaintiffs allege that the defendants falsely imprisoned them by placing them in disciplinary custody following their respective misconduct hearings. As stated above, there is no protected liberty interest in the change in custodial level that the plaintiffs were sentenced to. Moreover, under state tort law, any false imprisonment claim would be barred as the prison officials were acting within the scope of their employment as employees of the Commonwealth and sovereign immunity thus applies. *See Story v. Mechling*, 412 F.Supp.2d 509, 519 (W.D. Pa. 2006) (stating that a Commonwealth defendant acting within the scope of their employment cannot be held for damages arising out of an intentional tort). Accordingly we recommend that any false imprisonment claims be dismissed against all defendants.

Even if the false imprisonment claims were not dismissed for the above reasons, the court should decline to exercise supplemental jurisdiction over such claims. Because the complaint fails to state a claim for a violation of the plaintiffs' federally protected rights and the plaintiffs' federal causes of action should be dismissed, the plaintiffs' pendent state false imprisonment claims should also be dismissed. 28 U.S.C. § 1367(c)(3)("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if - . . . the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)(holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims).

VII. Retaliation Claims.

Throughout their complaint the plaintiffs assert, with no factual support, that they were subject to retaliation for exercising their First Amendment Rights. "A prisoner alleging that prison officials have retaliated against him for exercising his constitutional rights must prove that: 1) the conduct in which he was engaged was constitutionally protected; 2) he suffered 'adverse action' at the hands of prison officials; and 3) his

constitutionally-protected conduct was a substantial or motivating factor in the decision to discipline him." *Carter v. McGrady*, 292 F.3d 152, 158 (3d. Cir. 2002).  Neither of the plaintiffs has made any allegations as to which defendants retaliated against him or identifying the constitutionally-protected conduct for which he was disciplined.  We will recommend that any retaliation claims against the defendants be dismissed.

VIII.  Fourth Amendment Claims.

The complaint can be read to assert a violation of the Fourth Amendment with regard to the searching of the plaintiffs' cells.  The Supreme Court has held that the Fourth Amendment prohibition on unreasonable search and seizure does not apply to inmates and their cells due to the exigencies of prison life. *Hudson*, *supra*, 468 U.S. at 529.  Accordingly, we will recommend that any Fourth Amendment claims against the defendants be dismissed.

IX.  Eighth Amendment Claims.

The plaintiffs allege a violation of the Eighth Amendment in the "Preliminary Statement" of their complaint.  "[T]o establish an Eighth Amendment violation an inmate must allege both

an objective element -- that the deprivation was sufficiently serious -- and a subjective element -- that a prison official acted with a sufficiently culpable state of mind, i.e., deliberate indifference." *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996). In the instant complaint, the plaintiffs have failed to sufficiently allege that the suffered any cruel and unusual punishment, any sufficiently serious deprivation, or what prison official was responsible for such violations of the Eighth Amendment. Merely being placed in disciplinary custody does not violate the Eighth Amendment. We will recommend that any Eighth Amendment claims that may be construed from the complaint be dismissed.

X.  Leave to Amend.

The court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002). In the instant case we conclude that allowing amendment in this case would be futile.

XI.  Recommendations.


        Based on the foregoing, it is recommended that the
defendants' motion (Doc. 27) to dismiss the plaintiffs' complaint
be granted and that the Clerk be directed to close the file.



                                        **_/s/ J. Andrew Smyser_**
                                        J. Andrew Smyser
                                        Magistrate Judge

Date:  April 22, 2010.